UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LINDA JOYCE BRENNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:07 CV 1632 DDN |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the request of plaintiff Linda Joyce Brenner for waiver of the recovery of the overpayment to her of disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401, <u>et seq.</u> The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 16.) For the reasons set forth below, the court affirms the decision of the ALJ in part and otherwise reverses and remands.

**I. BACKGROUND**

Based on her application filed in June 2000, plaintiff Linda Joyce Brenner was found to be disabled and entitled to benefits with an established onset date of February 1, 2000. (Tr. 13, 36.) Brenner returned to work as a self-employed realtor in January 2001. (Tr. 14.)

On August 13, 2004, the Social Security Administration (SSA) issued a document captioned "Notice of Proposed Decision" in the form of a letter. The letter stated that it had information about her work and earnings that could affect her disability payments. (Tr. 16-19.) Based on that information, the SSA stated in the letter that it appeared that it would decide that her disability ended because of substantial work and that she was not entitled to payment if substantial work began again. (Tr. at 16.) The letter further explained that allowing for a nine-month trial work period, the additional two months of automatic benefit

payment, and the 36-month extended period of eligibility, she was no longer eligible to receive benefits as of October 2004. (Tr. 14, 17-18.) The letter further stated that the purpose of the letter was to give her an opportunity to provide more information that she would like the SSA to consider. (Tr. at 16, 18.) The letter advised Brenner that work is substantial if the monthly earnings in 2004 averaged more than $810. (Tr. at 17.)

Although the record does not contain a final decision effectuating the Notice, it is undisputed that on August 26, 2004, Brenner filed a Request for Reconsideration. (Tr. at 20.) The record does not contain an official written decision on that request.

However, on July 5, 2005, the SSA issued another Notice of Proposed Decision. (Tr. at 21-24.) The Notice stated that "[w]e have information about your work and earnings that could affect your Social Security disability payments. Based on this information, it appears we will decide that your disability ended because of substantial work November 2001 and that you are not entitled to payments for: April 2003 through July 2003, October 2003, April 2004 through August 2004, October 2004 and continuing." (Id.) The letter further stated that the purpose of the letter was to give her a chance to provide more information that she would like the SSA to consider. (Tr. at 21.) The document advised Brenner that work is substantial if the gross monthly income averages more than $830 during 2005. (Tr. 21.)

On January 23, 2006, an official written decision effectuating the terms of the July 5, 2005 Notice of Proposed Decision was issued. (Tr. at 33-38.) This document reaffirmed that work is substantial if the gross monthly earnings averaged more than $830 in 2005. (Tr. 34.)

An internal Social Security memo dated January 23, 2006 stated that Brenner's August 2004 request for reconsideration was inappropriate because no final written decision had been issued. (Tr. at 39.)

On February 23, 2006, Brenner filed a request for reconsideration of the January 23, 2006 decision. (Tr. at 45.) On February 27, 2006, Brenner filed a request for a waiver of the recovery of the overpayment because the overpayment was not her fault and she could not afford to pay the money back. (Tr. at 46-53). On March 1, 2006 she prepared and

-2-

provided the SSA with a Work Activity Report and many pages of her living expenses and income. (Tr. 46-82.)

On May 23, 2006, the SSA issued a Notice of Reconsideration Decision of the overpayment itself and the termination of benefits, concluding that her disability had ended and that she was not entitled to payments for April 2003 through July 2003, October 2003, April 2004 through August 2004, October 2004 and continuing. (Tr. at 105-07.)

The same day, the SSA denied her request for waiver of the collection of the overpayment in the amount of $18,644.10 because (1) she was working performing significant services and her earnings were above substantial gainful activity (SGA) for the months in question; (2) she failed to timely report her work above the SGA level, received notice that her benefits would cease, and protested the cessation; and (3) she knew or should have known that earnings above SGA level would adversely affect her eligibility for benefits after the expiration of the trial work period and her failure to report her work activity and return the checks to which she was not entitled was the cause for the overpayment. (Tr. at 108-110.)

Brenner filed a request for a hearing by an Administrative Law Judge (ALJ). (Tr. at 111.) On January 30, 2007, an ALJ conducted a hearing. On February 22, 2007, the ALJ issued a decision finding that Brenner was overpaid benefits in the amount of $18,644.10; that she "was not without fault in causing the overpayment;" and that recovery of the overpayment should not be waived. (Tr. at 13-15.) On March 19, 2007, Brenner filed a request for review of the hearing decision with the Appeals Council. (Tr. at 8-9.) On July 26, 2007, the Appeals Council denied her request for review. (Tr. at 4-7.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. TESTIMONY AT THE HEARING

At the January 30, 2007 hearing, Brenner testified that she had sold real estate for the past 14 years, and that she was currently employed as a independent contractor realtor with Coldwell Banker Gundacker. (Tr. at 129.) Brenner testified that she underwent quadruple bypass surgery in 1998 and applied for disability in 2000. (Tr. at 129.) She further

testified that during the years 2000 to 2001 she earned about $10,000 per year, but that although she was currently working the same amount of hours, she was now earning less because of the declining real estate market. (Tr. at 131.) She further testified that as an independent contractor she pays for all of her expenses, and that while her expenses have doubled, her income has decreased. (Tr. at 132.)

Brenner further testified that sometime in 2004 or 2005 she was notified that her disability payments were going to stop, and that she cooperated with the SSA, but continued to receive payments for a period of time which she used to pay her living expenses. (Tr. at 133.) She further testified that her monthly expenses include a health insurance payment of $535; a mortgage payment of $1556.73; a home equity payment of $462.23; a condominium fee of $255; drug expenses of about $107.97; a doctor bill of $71.77; an electric bill of $93.33; a water bill of $11.20; and a Metropolitan Sewer District bill of $13.57. (Tr. at 133-134.) Plaintiff testified her monthly living expenses totaled $6,128.44, and that her income after expenses was less than $1,000 per month. (Tr. at 134-35.)

As to fault, Brenner testified she "did everything right," including going to SSA and talking to the people there, but that SSA kept sending her checks, "so I thought it was okay." (Tr. at 135.) She testified that she did nothing to mislead the SSA, or to misrepresent her situation. (Tr. at 135.) She further testified that she would not be able to pay back the money, based on her expenses and income level. (Tr. at 135.)

She further testified that she sees her internist quarterly, she receives vitamin B shots twice a month, and that she sees her cardiologist twice a year. (Tr. at 135.) Brenner testified that she takes several medications for her heart condition, which she will continue to do for the rest of her life; that she is unable to work any more than she is currently doing; and that she has sent out close to 100 resumes over the past six months, but was unable to secure additional employment. (Tr. at 136.)

Brenner further testified that her health is deteriorating due to weight gain, and that she does not have any form of recreation that she

-4-

is able to afford on a regular basis. (Tr. at 137.) She testified that she did not believe she was going to be able to make the mortgage payments on her home, that she would run out of money in about three months, and she would be putting her house on the market as a result. (Tr. at 137.) She testified that she did not know whether her medical expenses would increase in the future; that she currently has approximately $3,500 in her checking and savings accounts, as well as an IRA worth $2,000; and that she has no other source of income other than her real estate commissions. (Tr. at 138-39.) Plaintiff testified that in the past year she has received $458 per month; that she has not made any substantial purchases over the past year; and that she traveled out of the country in November 2006, but that her airfare was paid for by someone else and her trip expenses were very limited. (Tr. at 140-41.) She testified that she has borrowed money from her eighty-year-old mother during the past two or three years. (Tr. at 142.) As to her current medical status, Brenner testified that her current symptoms related to her diagnosis of coronary artery disease, and included chest pain and blockage in the left leg and neck. (Tr. at 142.)

Finally, Brenner testified that she did not think it would be fair or reasonable, or in good conscience for Social Security to recoup the money that it claims is due; that she has acted in good faith throughout the last two or three year period with respect to the payments; that if the court would find against her and determine that the money SSA claims is due and owing, she would not have the ability to pay the money back; that she has had to take out a home equity loan and as a result has lost $80,000 in equity in the last three or four years; that as a result she would probably lose her house; and that there was a very good possibility that she would have to file for bankruptcy. (Tr. at 143-44.)

### III.  THE ALJ'S DECISION

The ALJ set forth the issues as (1) whether Brenner was at fault in causing overpayment, and (2) if there was a finding that she was not at fault, whether recovery of the overpayment would defeat the purpose of Title II of the Social Security Act and therefore, should be waived. (Tr. at 13.)

The ALJ first summarized Brenner's work history, noting that Brenner returned to work as a self-employed realtor in January 2001; that the fact that she returned to work would not affect her ability to receive payment immediately because she would be permitted a nine month trial work period to test her ability to work despite her health problems; and that her trial work period was from January 2001 through September 2001. The ALJ further noted that after Brenner's trial work period ended, her disability payments were appropriately paid for the months in which her disability ended, as well as the following two months, October through December 2001; and that after her trial work period ended, provided her health problems still met the guidelines, she was entitled to an extended 36 month period of eligibility during which her benefits would be restarted for any month or months her work was not substantial. As to Brenner's case, the ALJ noted that her extended period of eligibility began in October 2001, and her benefit termination month was October 2004.

The ALJ concluded that, based on the evidence, Brenner was overpaid benefits in the amount of $18,644.10 due to her work over SGA during the periods from April 2004 through August 2004, October 2004 through December 2004, and January 2005 through January 2006. (Tr. at 14.)

The ALJ further concluded that Brenner could not be found to be without fault in causing the overpayment. She noted that Brenner was performing significant services in her one-person business, and her earnings were above the SGA guidelines during the months in question. She further noted that Brenner knew or should have known that earnings above SGA levels after the expiration of her trial work period would adversely affect her eligibility to receive Social Security checks, but that she nonetheless failed to timely report her work above the SGA guidelines, which ultimately led to the overpayment. (Tr. at 14.)

The ALJ applied the three tests for determining whether a claimant has engaged in SGA set forth in 20 C.F.R. § 404.1575. The ALJ concluded that Brenner had engaged in SGA under the first of the applicable tests because she was currently an independent contractor for Coldwell Banker, and in that position she performs all of the duties of an agent involved in the sale or purchase of residential property. The ALJ found the

evidence was convincing in demonstrating that Brenner had failed to furnish information that she should have known was material. (Tr. 15.)

The ALJ concluded that Brenner was overpaid benefits in the amount of $18,644.10; that she was not without fault in causing the overpayment, and therefore recovery of the overpayment should not be waived. (Id.)

### IV. APPLICABLE LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

Congress generally requires the Social Security Administration to recoup payments of disability benefits that are in excess of the claimant's legal entitlement. See 42 U.S.C. § 404(a)(1)(A)(the Commissioner shall require a refund of the amount paid in excess of the correct amount). However, Congress has further provided, "[T]here shall be no . . . recovery from [] any person who is without fault if such . . . recovery would defeat the purpose of this subchapter or would be against equity and good conscience." See 42 U.S.C. § 404(b).

The Commissioner's regulations allot to the overpaid individual the burden of showing entitlement to a waiver of the recovery of the overpayment. 20 C.F.R. § 403.506(c) (2007)("When waiver is requested, the individual gives SSA information to support his/her contention that he/she is without fault in causing the overpayment . . . and that adjustment or recovery would either defeat the purpose of title II of the Act . . . or be against equity and good conscience").

-7-

Under the regulations, a determination of whether the claimant is "without fault" requires consideration of whether or not the overpayment resulted from the following:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507 (2007).

The Commissioner's regulations provide that recovery of an overpayment of disability benefits would defeat the purposes of Title II of the Social Security Act if it would deprive the person of income that was required for ordinary and necessary needs. The pertinent regulation describes as an example of where recovery would defeat the purposes of Title II circumstances in which the individual needs substantially all of her current income to meet ordinary and necessary living expenses. 20 C.F.R. § 404.508 (2007).

Finally, under the applicable regulations, recovery of an overpayment of disability benefits would be against equity and good conscience, if the person involved changed her position for the worse or gave up a valuable right after receiving notice of the overpayment, or if the individual did not receive the overpayment because he or she was living in a separate household. The regulation specifically provides that "the individual's financial circumstances are not material to a finding of *against equity and good conscience*." 20 C.F.R. § 509 (2007).

## V. DISCUSSION

In this case Brenner does not dispute the fact that she was overpaid disability benefits. Rather she argues the ALJ erred in failing to discuss or apply the law regarding waiver and by making her conclusion without evidence to support it. Specifically, she argues the ALJ erred in failing to decide the case based on the evidence about whether the plaintiff was without fault under the regulatory definition, and if so,

-8-

whether repaying the overpayment would prevent her from meeting her basic expenses and maintaining her basic standard of living. She further argues there is no evidence in the record that she was given any written notice about what she should report and when she should report it after benefits were granted, nor is there any evidence that she was acquainted with the legal concepts of SGA and trial work period. (Doc. 19 at 8, 10.)

**A.    Fault**

Throughout these proceedings Brenner alleged and argued that she was without fault in the overpayments. The ALJ concluded that Brenner was not without fault and that she was, therefore, not eligible for waiver of recovery of the overpayment of her benefits. More specifically, the ALJ found (a) that Brenner knew or should have known that her earnings above SGA levels, after the expiration of her trial work period, would adversely affect her eligibility to receive Social Security checks, and (b) that Brenner nonetheless failed to timely report her work above the SGA guidelines. The court finds that the ALJ's findings are supported by substantial evidence, but only for the overpayments made after August 2004.

In applying the considerations for determining whether an overpaid individual was without fault, set forth in 20 C.F.R. § 404.508, the court finds no substantial evidence in the record that Brenner made an incorrect statement indicating her entitlement to benefits in spite of her receipt of income which established substantial gainful activity. Nor is there any substantial evidence in the record that she failed to furnish relevant information which she knew or should have known to be material; there is no evidence that Brenner was directed to provide relevant information to SSA about her gross monthly income as a self-reporting that it became substantial gainful activity.[1]

---

[1]The Commissioner argues that Brenner failed to comply with the regulation that required her to report to SSA when she returned to work. 20 C.F.R. § 404.1588 (2007). That regulation also generally required her to report an increase in her earnings. Id. And the Commissioner argues that general SSA procedures called for Brenner to be told, during the

-9-

However, the August 2004 Notice of Proposed Decision document which Brenner received indicated that her entitlement to continued disability benefits was being considered by SSA and the document informed her that gross monthly income averaging more than $810 in 2004 would qualify as substantial gainful activity. Nothing in the administrative record before this date provided this information to Brenner. For the period before her receipt of this document, the ALJ's finding that Brenner knew or should have known that some of her monthly earnings qualified as substantial gainful activity is founded upon speculation about what Brenner knew. Such speculation is not substantial evidence.

The Notice document of August 2004, however, is substantial evidence that when Brenner accepted payments over the indicated amount she "either knew or could have been expected to know [that her accepting those payments] was incorrect." 20 C.F.R. § 404.508. By this document Brenner was notified in writing that her earnings could affect her disability benefits, and she was encouraged to provide any additional information she would like the Agency to consider before making a final determination. The notice included an explanation of the nine month trial work period, the thirty six month extended period of eligibility, and the rules concerning the value of work performed by self employed individuals. (Tr. at 16-19.)

Therefore, for the post-August 2004 overpayments, the ALJ's finding that Brenner could not be found to be without fault is supported by substantial evidence. Brenner argues that the ALJ failed to discuss the relevant regulations in her decision. While it is true that the ALJ did not cite the applicable regulations in her decision, she discussed and developed the facts of the case consistent with her conclusion that

---

initial interview with SSA on her application for disability benefits, of her reporting requirements. The Commissioner then argues that no evidence indicates that the usual procedures were not followed. While this is true, there is also no evidence in the record before the court that the usual procedures were followed. Also, the Commissioner argues that no regulation requires that notification of reporting requirements be in writing. Again, while this may be true, there is, again, no evidence of any kind in the record that plaintiff was informed of her reporting requirements at any time for the period through August 2004, whether in writing or otherwise. These arguments are to no avail.

Brenner was not without fault as defined by the regulations, even though her conclusions were not supported by substantial evidence for the period up through August 2004. While a fuller explication of the relevant regulations in the ALJ's opinion would have been helpful, the Eight Circuit has consistently held that a deficiency in opinion writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case. See Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Reeder v. Apfel, 214 F.3d 984, 988 (8th Cir 2000). The ALJ's failure to cite all of the appropriate regulations did not limit the court in its review.

**B.    Purposes of Title II or against equity and good conscience**

Brenner's entitlement to a waiver of the SSA's recovery of the April to August 2004 overpayments requires her to show that their recovery would defeat the purposes of Title II or that recovery would be against equity and good conscience. In this regard, Brenner argues, and has submitted unopposed substantial evidence (her testimony and documentary list of expenses) that the recovery of the overpayment should be waived because repaying the debt would render her unable to meet her ordinary and necessary expenses. This evidence is irrelevant to whether recovery would be against equity and good conscience. 20 C.F.R. § 509 ("the individual's financial circumstances are not material to a finding of *against equity and good conscience*"). There is no substantial evidence in the record that Brenner changed her position for the worse, or gave up a valuable right on account of the notice of overpayment, or did not receive the overpayment. Id.

However, Brenner's financial information is relevant to whether or not recovery of the overpayments would defeat the purposes of Title II. 20 C.F.R. § 508. Whether or not her evidence is sufficient to persuade the SSA that recovery, or what amount of the recovery, would defeat the purposes of Title II is an issue to be decided by SSA in the first instance. The case will be remanded to the Commissioner for further hearing on this issue and any other relevant issue.

## VI. CONCLUSION

For the reasons set forth above, the court finds that the final decision of the Commissioner is supported by substantial evidence on the record only as to the overpayments made after August 2004. As to the entitlement of the Commissioner to recover the overpayments through August 2004, the decision of the Commissioner is reversed and remanded for further proceedings. An appropriate Judgment Order is issued herewith.

                                                /S/   David D. Noce  
                                      **UNITED STATES MAGISTRATE JUDGE**

Signed on August 20, 2008.